### City of Chicago v. Mary Saldman.

### Gen. No. 12,778.

1. VERDICT—*when not excessive.* A verdict for $4,500 is not excessive where it appears that the plaintiff, a woman, sustained as the result of the accident in question, femoral hernias in each groin and that her injuries were permanent and that from a strong vigorous woman she became a chronic invalid.

2. COLLATERAL ISSUE—*when evidence incompetent as introducing.* Where a medical expert has testified as to knowledge of a particular injury having been produced by external violence in a person other than the plaintiff in the action, it is not competent to permit him to testify as to the character of the external violence which produced such injury and the appearance thereof.

3. TRIAL—*discretionary power of judge as to order of introduction of proof.* While it is the proper practice to require an accident to be shown before permitting proof of the injury and the extent thereof, it is within the discretion of the court to admit evidence as to the injury, etc., upon the promise of counsel to connect the injury with the accident by evidence subsequently to be offered.

4. HYPOTHETICAL QUESTION—*when proper.* A physician who has no personal knowledge as to what has caused an injury in question cannot testify as to the fact, but he may be permitted hypothetically to state what might have caused such injury.

5. JUROR—*not competent to impeach his own verdict.* It is not competent for a juror to undertake to impeach his own verdict by statements as to what occurred within the privacy of the jury room. The one exception to this rule is that the evidence of the juror as to the misconduct of the juror which takes place away from the jury room during the trial, will be received for the purpose of impeaching such verdict.

6. JUROR—*what statements pertain to deliberation within jury room.* The affidavit of a juror which recites that another juror during the deliberations stated that he had talked with a medical man with respect to the injury complained of in the action, recites a matter incompetent to be received in impeachment of the verdict as it refers to the mere deliberations of the juror.

City of Chicago v. Saldman.

7.   STATUTORY DAMAGES—*when will not be awarded upon af-firmance of judgment.*   Where three trials of a cause have been necessary to reach a conclusion thereon and the appeal appears to have been prosecuted in good faith, an award of statutory damages will not be made upon affirmance.

Action in case for personal injuries.   Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, pre-siding.   Heard in this court at the October term, 1905.   Affirmed. Opinion filed October 29, 1906.

JOHN F. SMULSKI, for appellant; EDWARD C. FITCH and FRANK D. AYERS, of counsel.

BRANDT & HOFFMANN, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This cause has been three times submitted to a jury. The first jury found a verdict for the city, the second jury were unable to agree and were discharged by the trial judge, the third jury rendered their verdict against the city for $4,500, upon which verdict, after overruling a motion for a new trial, a judgment was entered, from which judgment the City of Chicago prosecutes this appeal.

The declaration charges *inter alia* that the City of Chicago wrongfully neglected to keep a certain public sidewalk on Greenwich street between North Robey street and Hoyne avenue in good repair and condition, etc., and that in consequecnce of such neglect appellee, while passing along and over said sidewalk in the exercise of due care for her own safety, fell off the sidewalk and was precipitated to the ground about four feet below the sidewalk, and as a result of such negligence upon the part of the city she suffered severe injuries, including bruises to her body, and injury to the arm and shoulder and "two femoral hernias" one in each groin, and that she suffered much pain, and that her general health, which had previously been good, was permanently impaired.

The city offered no proof in contradiction of appellee's evidence that at the time and place of the accident there were loose boards in the walk, with some planks removed, and that there was no guard or railing around the place of the accident, which was elevated about four feet from the roadway. Neither did the city contest, by proof, the happening of the accident as detailed by appellee and her witnesses, nor that the sidewalk had been insecure, as detailed, for some time prior to the happening of the accident.

There is sufficient evidence in this record to support the verdict, if it is proof against the objections made by appellant to its admissibility, and the instructions upon the law of the case given to the jury stated correct legal principles applicable to the facts deducible from the evidence, about which instructions no complaint is made.

Appellant assigns various errors upon the record as reasons for a reversal, and argues four of them, viz.: (1) That the damages awarded are excessive; (2) the court excluded proper evidence offered on behalf of appellant; (3) error of court in admitting improper evidence on behalf of appellee against the objection of appellant; and (4) error in the trial court in refusing to receive and consider the affidavits of five jurymen, offered in support of its motion for a new trial.

We will consider and dispose of these objections in the order in which they are above recited.

First. The injuries from which appellee suffered as a result of the accident caused by the negligence of the city, according to her medical testimony were severe, the most serious injuries being the "femoral hernias" in each groin. From these injuries, according to the proof of appellee, she has suffered continuously since the time of the accident, February 7, 1900, until the time of the trial, a period exceeding five years—and that she, who was before a strong, vigorous woman, is now a confirmed chronic invalid. There is abundance of testimony in the record—if credited by the jury—satis-

factorily establishing such condition of permanent injury as primarily attributable to the accident, and if this be so, the award of damages cannot be regarded as excessive, but on the contrary must be viewed as a conservative award.

Second. Dr. Bueckling, a witness for the city, testified as a medical expert on "femoral hernias," in an attempt to demonstrate that it was highly improbable that appellee's claimed "femoral hernias" were attributable to the accident. Over an objection this witness testified that he did not remember of a single instance of "femoral hernias" being produced by external violence, and then, after some thought, he said he did remember one case at the County Hospital where a woman fell and sustained a "femoral hernia," and that was the only case he could recall where a "femoral hernia" was produced by external violence. Counsel for the city followed this up by asking the doctor, "Can you state what kind of external violence produced that, or what the appearance of it was?" to which appellee's counsel objected, which objection the court sustained. It was immaterial as to what kind of violence produced such injury to the woman at the County Hospital. She was not involved, neither was the manner in which her injury was sustained at all pertinent; nor would it have been proper to have compared the method of the happening of her injury with that attributable to the hernias suffered by appellee. Such testimony, if otherwise admissible, must be barred, as it is patent that all the witness could have testified about as to the manner the hernia in the woman at the County Hospital was occasioned rested on what had been told him and of which he could not possibly have any personal knowledge. It was clearly "hearsay." The objection was well taken and should have been, as it was, sustained.

Third. It is also urged as reversible error that the court admitted medical testimony against the objection of appellant, before the evidence as to the happen-

ing of the accident had been heard. While it is un-
doubtedly the better practice to have the medical testi-
mony follow the incidents involved in the infliction of
the injuries, yet the whole matter as to the order—
among other things—in which the proof shall be heard
rests in the sound discretion of the court. An ex-
amination of the record fails to disclose any disadvan-
tage suffered by appellant which could not have been
overcome by a proper motion. If appellant had de-
sired to recall any of appellee's medical witnesses for
further cross-examination, the opportunity to do so
was open, if counsel saw fit to avail of it. No motion
was made with that end in view. The objection is,
therefore, of no force. The objection to the hypothet-
ical questions put to the medical witnesses of appellee
rests on the fact that there was no evidence at the time
to support them. In this situation it was incumbent
upon appellee to fairly support the evidential facts
embodied in the hypothetical questions by proof; fail-
ing to do so, appellant would have been entitled to have
excluded all answers to such hypothetical questions
on motion made for that purpose. The court, in
ruling on the objections, announced such a motion
would be entertained, unless proof to support them
was forthcoming. Proof fairly tending to support
each of the hypothetical questions was given, and
the testimony was rightfully retained in the record.
The hypothetical question put to Dr. Blanchard and
his answer thereto are:

Q. "Suppose that in this case the plaintiff had no
hernia at all and fell from a sidewalk down three or
four feet to the ground and sustained considerable jar,
and in two or three days after that this hernia de-
veloped in each side—to what would you attribute the
hernia in this case?"

A. "To the jar and concussion."

We are unable to see any infirmity in either the
question or answer. The question is within the proof,
and the answer is fairly responsive. A doctor who has

no personal knowledge as to what caused an injury cannot testify as to the fact, but he may state hypothetically what might have caused such injury.

We have examined with care the proof of appellee and the rulings of the court thereon to which objections were made and exceptions preserved, and which are now assigned for error by appellant, and are of the opinion that all the substantial rights and interests of appellant were maintained in these rulings of the trial court.

Fourth. It is a fast and firm principle, strongly intrenched in the jurisprudence of this state, that the statements of jurors as to what occurred in the privacy of the jury room cannot be entertained or looked to for the purpose of impeaching or disturbing the verdict rendered. The only exception to the receiving of the evidence of a juror to impeach the verdict is of misconduct of a juror which takes place away from the jury room during the trial. Such is the uniform legal doctrine in England and most of the states of the Union, and has so obtained since the days of Lord Mansfield wherever the common law prevails. In Sanitary District v. Cullerton, 147 Ill. at page 390, it was said: "This court in an unbroken line of decisions from the case of Forrester v. Gerard, Breese 74, is committed to the doctrine that the affidavits of jurors cannot be received for the purpose of setting aside the verdict. There may be dicta in some of the cases intimating a contrary rule, but in every case where the question has been before the court and determined the principle has been adhered to."

Thompson on Trials lays down the rule in section 2619 that "The rule of public policy which excludes the testimony of jurors to impeach their verdict extends only to matters taking place during their retirement."

Graham and Waterman on New Trials, p. 1429, Vol. 3, say: "Public policy forbids the introduction of jurors' affidavits to prove anything which may have

transpired in the jury room while consulting of their verdict."

Greenleaf on Evidence, vol. 1, 755, writing upon the same subject, says: "On similar grounds of public policy and for the protection of parties against fraud, the law excludes the testimony of * * * jurors when offered to prove misbehavior in regard to the verdict. Formerly, indeed, the affidavits of jurors have been admitted in support of motions to set aside verdicts by reason of misconduct; but that practice was broken in upon by Lord Mansfield, and the settled course now is to reject them because of the mischiefs which may result if the verdict is thus placed in the power of a single juryman."

The courts and text-writers often quote in illustration of this principle the words of Lord Mansfield that "Considering the arts which might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence," and also of Lord Ellenborough that "the danger would be infinite if an affidavit could be received from the jurymen for the purpose of setting aside a verdict."

These reasons are as cogent to-day and the principle as essential of enforcement, and the necessity for not departing from them as insistent, as when they were first given utterance. Bayliss on New Trials, 543; Rex v .Wooler, 2 Starkie, 111; Bonardo v. People, 182 Ill. 411; W. C. Street Ry. v. Huhnke, 82 Ill. App. 404; Mix v. North Am. Co., 209 Pa. 636; Rush v. St. Paul City Ry., 70 Minn. 5; Heffron v. Gallupe, 55 Me. 563; Peppercorn v. City of Black River Falls, 89 Wis. 38; Harrington v. Worcester, 157 Mass. 379.

The objection, however, is admittedly on the facts not well taken. Counsel for the city admit the rule with its limitation substantially as above stated, but contend that the action of the juror complained of as affecting the verdict, occurred outside of the jury room during the trial. But this claim is grounded on a misconception of the construction to be placed upon what it is conceded occurred. One of the jurors stated in the jury room to his fellow-jurors, at the time they were

City of Chicago v. Saldman.

deliberating upon their verdict, that during the progress of the trial he had talked with a medical man in relation to the injuries about which appellee complained, and particularly concerning the hernias, and that he was informed by this man that the hernias with which appellee was afflicted could not have resulted from childbearing. No proof was tendered that the juror did in fact talk with any one about the case outside of the jury room; the medical man was not produced, nor any one else who pretended to have any knowledge that any such conversation ever took place —merely a statement made by the juror in the jury room, which may have been false for aught that appears to the contrary. The juror who is alleged to have made the statement was not examined; neither was his affidavit produced. The whole matter resolves itself into one which took place in the jury room. The statement itself, if made, could hardly have had any effect in producing the verdict arrived at, for there was already credible evidence adduced by appellee on the trial to the effect that the hernias were not produced by childbearing.

The affidavits of five jurors tending to impeach the verdict rendered by detailing matters occurring between the jurors after retiring to the jury room, and while considering of their verdict, were not proper to be received and were rightfully excluded and their consideration refused by the trial court on the hearing of the motion for a new trial.

Appellee asks for an affirmance with an award of statutory damages. We see no just reason for acceding to this request. Surely a case which took three jury trials to produce a verdict for appellee can hardly be regarded as so free from doubt as not to justify the seeking of the further judgment of a court of review. While appellee's cause is meritorious, it does not follow that this appeal is frivolous. Nor can the city attorney be absolved from what he may regard as his duty in the conduct of the litigation committed to his care by the suffrage of the citizens. Neither is it the province of the courts to criticise the conduct of a law

officer for prosecuting his client's cause in those tribunals provided by law.

The record fails to disclose any error, well assigned, necessitating, in our opinion, another trial, and the judgment of the Superior Court will consequently be affirmed.

*Affirmed.*